**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **V.T., a minor, by and through her** | : | |
| **parents, M.E.T. and M.J.T.,** | : | |
| **c/o Timoney Knox, LLP** | : | |
| **400 Maryland Drive, P.O. Box 7544** | : | |
| **Fort Washington, PA 19034** | : | |
| | : | **CASE NO.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **NORTH PENN SCHOOL DISTRICT,** | : | |
| **401 E. Hancock Street** | : | |
| **Lansdale, PA 19446** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MEGAN MCGEE-HEIM, individually** | : | |
| **and in her official capacity,** | : | |
| **66 Bertha Street** | : | |
| **Feasterville, PA 19053** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff, V.T., by and through her parents M.E.T. and M.J.T., by and through their attorneys, Timoney Knox, LLP, makes the following Complaint against Defendant, North Penn School District and Defendant Megan McGee-Heim, individually and in her official capacity as Director of Special Education, Director of Special Education and Student Services, and/or Director of Secondary Special Education and Student Services for the North Penn School District, and alleges as follows:

## INTRODUCTION

1.      This is a civil rights action for damages arising under 42 U.S.C. § 1983 for violations of Plaintiff V.T.'s substantive due process rights under the Fourteenth Amendment to

the United States Constitution. Specifically, this action asserts that Defendants, acting under color of state law, created or enhanced a danger to V.T., a minor student, and failed to protect her from foreseeable harm.

2.      Specifically, on April 17, 2024, V.T., then a 12-year-old female student, was savagely and viciously beaten by a fellow student in the school cafeteria of Pennbrook Middle School in the North Penn School District. V.T. was struck repeatedly in the back of the head with a steel Stanley cup[1] and her forehead was slammed into a cafeteria table by an assailant before the assailant was separated away from her.

3.      As a result of the foreseeable, preventable, and vicious physical assault and battery, V.T. sustained head injuries, a concussion and severe trauma and anxiety which have derailed her life and will continue to plague her and her family in the future.

4.      The brutal attack on V.T. on April 17, 2024 followed the assailant's lengthy, well-known and well-documented history of aggressive peer interactions and violent behaviors toward other students in the other schools she had previously attended within the North Penn School District, as well as her recent expulsion from a private school for students with behavioral health and/or special education needs (the "Private School"), all of which were directly known by the Defendant North Penn School District when they placed the assailant in the general education environment at Pennbrook Middle School without appropriate safeguards or protections of V.T., and other students, prior to the assault and battery of V.T..

5.      When Defendant North Penn School District knowingly and deliberately placed the assailant, a student with a well-known and well-documented history of violent behavior, into the general education environment at Pennbrook Middle School, which should have never occurred,

_____

[1] A Stanley Cup is an insulated, reusable, stainless-steel tumbler.

particularly without implementing required and/or appropriate safeguards or protections of V.T. and the other students at Pennbrook Middle School, it consciously disregarded a great risk of harm to the student body of Pennbrook Middle School in general and to V.T. in particular, and acted with deliberate indifference to V.T.'s rights and safety.

6.     The brutal attack on V.T. on April 17, 2024 also followed multiple and repeated specific threats of physical harm made against V.T. and other students at Pennbrook Middle School by the assailant, which V.T. and other students, and numerous parents, had specifically reported to the Defendant North Penn School District in the two and a half days prior to the physical assault and battery of V.T. in the school cafeteria.

7.     Defendant North Penn School District was directly and specifically aware of the assailant's long history of social, emotional and behavioral health needs, propensity for violence, prior acts of physical aggression and violence and of the specific threats of physical harm made by the assailant against V.T., and Defendant North Penn School District explicitly represented to V.T. that they would investigate those threats and that they would keep V.T. safe from any attacks by the assailant, but then failed to prevent the assault and battery by the assailant from occurring and failed to protect V.T. from the assault.

8.     Defendant North Penn School District made the disastrous decision on April 17, 2024 to physically bring the assailant into the crowded school cafeteria where V.T. was that school day, without adequately supervising the assailant and without adequate protections in place to protect V.T., while allowing the assailant to carry a steel Stanley cup that could obviously be used to inflict serious injuries on V.T., and other Pennbrook Middle School students.

9.     After wrongfully placing the assailant in the general education environment at Pennbrook Middle School, Defendant North Penn School District's promise that it would

investigate the threats of harm and keep V.T. safe were broken, and, when Defendant North Penn School District physically brought the assailant into the school cafeteria without adequate supervision, support and protections in place to protect V.T., it consciously disregarded a great risk of harm to V.T., acted with deliberate indifference to V.T.'s rights and safety, and its conduct shocks the conscience.

10.    Accordingly, Defendant North Penn School District must take accountability for its actions and must be held liable.

## PARTIES

11.    Plaintiff, V.T., is a minor child and citizen of the Commonwealth of Pennsylvania, and resides with her parents, M.E.T. and M.J.T., within this judicial district.

12.    Defendant, North Penn School District (hereinafter referred to as "Defendant School District"), is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a business address located at 401 E. Hancock Street, Lansdale, Pennsylvania 19446.

13.    At all times relevant hereto, Defendant School District was acting by and through its agents, employees, servants, and/or workers, who were acting within the course and scope of their agency, employment, and/or service with Defendant School District.

14.    Pennbrook Middle School is a school in the Defendant School District and, upon information and belief, the administrators, teachers, and staff working at Pennbrook Middle School are agents and/or employees of Defendant School District.

15.    Defendant, Megan McGee-Heim (hereinafter referred to as "Defendant McGee-Heim"), was at all relevant times employed as the Director of Special Education, Director of Special Education and Student Services, and/or Director of Secondary Special Education and

Student Services, for the Defendant School District. At all relevant times, Defendant McGee-Heim was an agent and/or employee of Defendant School District, acting under the color of state law and acting within the course and scope of her employment. At all relevant times, Defendant McGee-Heim reported to Todd Bauer, Ed.D, District Superintendent. Defendant McGee-Heim is sued in both her individual and official capacities.

JURISDICTION AND VENUE

16.    This Court has jurisdiction over this matter under 28 U.S.C. §1331 and 28 U.S.C. §1343 as the action arises pursuant to 42 U.S.C. §§1983 and 1988 and the Fourteenth Amendment to the United States Constitution.

17.    The practices and violations of Plaintiff's substantive due process rights alleged herein were committed in the Eastern District of Pennsylvania, wherein all parties reside, govern and operate. Therefore, venue in this Court is proper under 28 U.S.C. §1391(b).

FACTUAL ALLEGATIONS

18.    During the 2023-2024 school year, Plaintiff V.T. was a 7th grade, 12-year-old female student enrolled in the Defendant School District and attending Pennbrook Middle School.

19.    Pennbrook Middle School is a public school for students who are in grades 7, 8 and 9. Students at Pennbrook Middle School are generally between the ages of 12 and 15.

20.    On or around Monday, April 15, 2024, two days prior to the assault giving rise to this action, A.B., a 7th grade female student (hereinafter referred to as "Student 1" or the "assailant") was authorized, approved and/or directed by Defendants to transfer to and attend Pennbrook Middle School and begin attending school there as a new student.

21.    Upon information and belief, Student 1 had been previously identified by the Defendant School District as a student with disabilities and Student 1 had Individualized Education

5

Programs (hereafter "IEPs") that provided her with special education support that were intended to address her significant social, emotional and behavioral health challenges at school.

22.     Upon information and belief, prior to being transferred as a new student into Pennbrook Middle School on April 15, 2024, Student 1 had attended other schools within the Defendant School District. Specifically, upon information and belief, Student 1 previously attended A.M. Kulp Elementary School and Pennfield Middle School within Defendant School District.

23.     While attending those other schools within the Defendant School District, Student 1 demonstrated significant and ongoing social, emotional and behavioral health challenges and many acts of physical aggression and violence against other students and, as a result, Defendant School District had determined that she needed greater level of emotional and behavioral support than the public schools within Defendant School District could provide.

24.     Upon information and belief, as a result, Defendant School District had placed Student 1 via a Notice of Recommended Educational Placement ("NOREP") in a full-time emotional support program and placement at the Private School, a private school for students with behavioral health and/or special education needs.

25.     Upon information and belief, the NOREP was signed by Todd M. Bauer, Ed.D., Superintendent of Defendant School District.

26.     Upon information and belief, while Student 1 was attending the Private School, prior to being transferred as a new student to Pennbrook Middle School, Student 1 demonstrated many extreme social, emotional and behavioral health challenges and acts of physical aggression and violence to the point that the Private School determined it could no longer program for Student 1 and expelled her from school.

27.     Upon information and belief, Defendant School District, and in particular, its Director of Secondary Special Education and Student Services, Defendant McGee-Heim, had knowledge of Student 1's long history of negative peer interactions and aggressive and violent behaviors in the other schools she had previously attended in Defendant School District, as well as her recent expulsion from a local private school for students with behavioral health and/or special education needs, and her immediate need for greater (not less) social, emotional and behavioral supports.

28.     Upon information and belief, the specific knowledge of Defendant School District of Student 1's long history of negative peer interactions and aggressive and violent behaviors toward students in the other schools she had previously attended in Defendant School District included information provided to the Defendant School District from other District students, parents of other District students, accounts in educational records, including disciplinary records, and in video and audio files that were provided to and/or viewed by District employees related to Student 1.

29.     Upon information and belief, various District administrators, school principals, supervisors, school counselors and case managers had specific knowledge of Student 1's long history of negative peer interactions and aggressive and violent behaviors toward students in the other schools she had previously attended in Defendant School District.

30.     Yet, on or around April 15, 2024, Defendant School District, through its Director of Secondary Special Education and Student Services, Defendant McGee-Heim, and other District administrators and employees, made the decision not to find another alternative out-of-District full-time emotional support program and placement for Student 1, or another interim educational program outside of a District public school, but, instead, to affirmatively bring Student 1 back into

Defendant School District as a new student in a much less restrictive general education setting at Pennbrook Middle School.

31.    In doing so, Defendants were specifically aware that Pennbrook Middle School did not have an adequate level of emotional and behavioral support, or properly and adequately trained staff, required to meet Student 1's significant social, emotional and behavioral health needs and that placing Student 1 in the general education environment at that school at that time without appropriate special education and other supports, without proper and adequate staff training, and without the necessary safety procedures and supports, created a specific danger to the other students at the school, including V.T..

32.    Upon information and belief, Defendant School District, through its Director of Secondary Special Education and Student Services, Defendant McGee-Heim, and other administrators and employees, made the deliberate decision to place Student 1 in the general education environment at Pennbrook Middle School without first holding an IEP team meeting to discuss Student 1's severe needs, including her behavioral needs and the related risk of physical harm to other students, what supports Student 1 would require in transitioning to the new middle school environment, and what procedures and supports would be put in place to ensure the safety of Student 1 as well as the other students at Pennbrook Middle School, including V.T..

33.    Upon information and belief, Defendant School District, through its Director of Secondary Special Education and Student Services, Defendant McGee-Heim, and other administrators and employees, made the deliberate decision to place Student 1 at Pennbrook Middle School without developing, revising and/or issuing a new IEP, a behavior plan, a transition plan, a safety plan, or a NOREP documenting this change of educational placement and the reasons why that educational placement was utilized.

34.     By affirmatively authorizing and directing Student 1's placement in the general education environment at Pennbrook Middle School under these conditions, Defendant School District, through its Director of Secondary Special Education and Student Services, Defendant McGee-Heim, and other District administrators and employees, created and substantially increased the risk that the other students, including V.T., would be subjected to physical harm.

35.     Upon information and belief, Student 1's first day at Pennbrook Middle School was Monday, April 15, 2024, only two days before she attacked and viciously assaulted V.T. in the cafeteria of Pennbrook Middle School.

36.     On Monday, April 15, 2024, Student 1's first day of school at Pennbrook Middle School, Student 1 first encountered V.T. briefly in the girls' bathroom. V.T. and another student, Student L.T., were in the bathroom when Student 1 walked in. V.T. and her friend, Student L.T., left the bathroom without any incident.

37.     Shortly thereafter, a vapor sensor went off in the bathroom. As V.T., Student L.T., and Student 1 had recently been in that bathroom, they were all suspected of vaping, and were called down to an administrative office, at which time, each of the three students were taken to a conference room where they waited together with the Vice Principal, Daniel Grunmeier, to be searched.

38.     V.T. and Student L.T. were each searched by the Climate Coordinator, Meg Pierre, were cleared, and were permitted to go back to class.

39.     Upon information and belief, Student 1 was also searched and, upon information and belief, was also cleared of vaping in the bathroom that day, although she later bragged to other students that she had gotten away with it.

40.     Later that day, Student 1 was introduced to V.T. by other Pennbrook students, but there were no other interactions between the V.T. or Student 1 in school that day.

41.     Later that evening, on April 15, 2024, while V.T. was at home playing a Roblox game online with her friends, Student 1 found V.T.'s account, joined the game, and, without warning, starting harassing V.T. and making threats to physically hurt V.T. at school, including "wait until school" and warning V.T. that she should be scared to go to school.

42.     V.T. took these threats of harm very seriously and talked to her parents that night about the threats she was receiving from Student 1. She also became extremely nervous and fearful to go to school the next day.

43.     On the following day, Tuesday, April 16, 2024, V.T. went to school at Pennbrook Middle School, although she was very nervous and fearful of Student 1.

44.     In the morning, V.T. saw Student 1 in the hallway talking to another student and when V.T. passed by, Student 1 completely stopped talking and gave V.T. a threatening look, but did not say anything to V.T.

45.     Later that day, during gym class, V.T. was walking on the track and she again saw Student 1, who was speaking with another female student, Student T.B., at the time. V.T. saw Student T.B. point to V.T., after which, Student 1 ran down the track, following closely behind V.T., and then made multiple harassing comments directly to V.T., mimicking her, antagonizing her, and saying V.T.'s name repeatedly in a whiny tone to annoy and harass her.

46.     Later that day, during the 7th grade lunch period in the cafeteria, V.T. overheard Student 1 say loudly to another female student, Student B.B., that there was "going to be a fight" and then Student 1 looked directly at V.T. Based on the specific, targeted threats that Student 1

10

had made to V.T. during the Roblox game the night before, V.T. knew that Student 1 was talking about V.T..

47.     V.T. took the repeated threats from Student 1 very seriously, feared for her safety, and was very nervous and frightened that Student 1 would physically attack her at school.

48.     Immediately following the 7th grade lunch period that day, April 16, 2024, at approximately 1:30 p.m., V.T. was so frightened that she made the decision to report Student 1's threatening statements and harassing actions to the Pennbrook 7th grade Guidance Counselor, Colleen Fattori. At that time, V.T. and one of her friends, Student C.C., walked together to the Guidance Counselor's office, and they went into the office together. Both Ms. Fattori and the Climate Coordinator, Ms. Pierre, were present in the office at the time.

49.     V.T. then verbally reported to both Ms. Fattori and to Ms. Pierre what had occurred with Student 1 and she reported the threats that Student 1 had made to physically harm V.T., as well as other students at school.

50.     V.T. told both Ms. Fattori and Ms. Pierre that she was fearful of physical harm from Student 1, that she did not feel safe in school with Student 1 there, and was extremely anxious to return to her classes with Student 1 in the school building.

51.     While there, Ms. Fattori asked V.T. to give a written statement and V.T. wrote out the requested written statement about the threats of physical harm made against V.T. and against two other students, Student A.S. and Student Z.F.. V.T. signed her written statement and gave it to Ms. Fattori.

52.     Despite the reporting of these threats of physical harm by V.T. to these District employees, no additional supports or protections were offered to V.T. by any administrator, teacher or staff member of Defendant School District.

53.     Rather than providing V.T. with the supports and protections she required as a specifically-named and intended target of a physical assault by Student 1 – a student with a long well-documented and well-known history of physically aggressive and violent behaviors and peer conflicts – Defendant School District took the report, assured her that the reported threats would be investigated, assured her that she would be kept safe from Student 1, and instructed V.T. to return to her classes.

54.     Although the Defendant School District was permitted by law to unilaterally remove or suspend a student with disabilities who violated the Student Code of Conduct for up to ten (10) school days, Defendant School District did not exercise that authority to unilaterally remove Student 1 from her then-current educational placement at Pennbrook Middle School at that time.

55.     After leaving the Guidance Counselor's office, V.T. was still scared, but, relying on the Defendant School District's representations and assurances that the reported threats would be investigated and that V.T. would be kept safe from Student 1, V.T. returned to her classes. When V.T. returned to class after making these reports, however, she learned that Student 1 was actually assigned to the same class that she was returning to at that time. A few minutes later, Student 1 was called out of the class to go to the office and, when she returned, Student 1 gave V.T. a very threatening look.

56.     Neither Ms. Fattori nor Ms. Pierre, nor anyone else from Defendant School District contacted and/or followed up with V.T. that day to advise her as to whether her report had been investigated, the results of that investigation, and/or whether anything had been done to ensure her safety and to protect her from Student 1.

57.     On the following day, Wednesday, April 17, 2024, once again relying on the Defendant School District's representations and assurances that the threats would be investigated and that V.T. would be kept safe from Student 1, V.T. returned to school, although still very nervous and fearful of Student 1.

58.     Upon information and belief, a significant number of other complaints were made by students of Pennbrook Middle School to Defendant School District about Student 1's repeated threats of physical harm to Pennbrook Middle School students and/or other negative behaviors that were demonstrated by Student 1 during Student 1's first two and a half days of school at Pennbrook Middle School.

59.     Upon information and belief, a significant number of other complaints were made by parents of students of Pennbrook Middle School to Defendant School District about Student 1's repeated threats of physical harm to Pennbrook Middle School students and/or other negative behaviors that were demonstrated by Student 1 during Student 1's first two and a half days of school at Pennbrook Middle School.

60.     V.T. had also learned from other students on the morning of April 17, 2024 about other threatening statements that Student 1 had made about a few other students at Pennbrook Middle School, and she also heard from other students that Student 1 had created a "hit list" on her phone, wherein Student 1 had listed four or five 7th grade Pennbrook Middle School students that Student 1 intended to physically assault at school.

61.     Upon information and belief, Defendant School District was specifically made aware of Student 1's "hit list" and of the multiple threats of physical harm that had been made by Student 1 against students at Pennbrook Middle School.

62.     On the morning of April 17, 2024, V.T.'s parents met with Ms. Fattori for a previously scheduled meeting to go over V.T.'s Section 504 Accommodation Plan. During that meeting, V.T.'s parents discussed Student 1 and requested, among other things, that V.T. not be scheduled in classes with Student 1.

63.     During that meeting on the morning of April 17, 2024, V.T.'s parents advised Ms. Fattori how emotionally upset Student 1 had made V.T. during her first two days of school and Ms. Fattori reassured V.T.'s parents that the family did not need to worry about Student 1 because Student 1 wasn't going to be with the other students at school that day.

64.     V.T. did not see Student 1 at school at all that morning and was told by a friend that Student 1 had not been in any of her classes that day. Based on the assurances made the prior day by Ms. Fattori and Ms. Pierre, V.T. believed that Student 1 was not in the school building that day and that V.T. was safe.

65.     However, during the 7th grade lunch period that day, V.T. was surprised when she observed Student 1 walk into the school cafeteria, accompanied by the Climate Coordinator, Ms. Pierre.

66.     Student 1 was carrying a steel Stanley cup when she entered the school cafeteria.

67.     At first, Student 1 came into the cafeteria, spoke with a few students in the cafeteria, and then left the cafeteria with the Climate Coordinator, Ms. Pierre.

68.     During the time that Student 1 was in the cafeteria, Ms. Pierre did not remain in close proximity to Student 1 and was not adequately monitoring and/or supervising her actions and interactions with other students in the school cafeteria.

69.     Then, at approximately 1:15 p.m., V.T. finished eating her lunch and began to walk with another female student, Student B.B., to go to the bathroom.

70.     At that time, Student 1 re-entered the cafeteria from a different door. She was able to easily and immediately separate from Ms. Pierre, who, upon information and belief, had been assigned to accompany Student 1 to the cafeteria.

71.     Student 1 charged directly toward V.T., who was walking away from her lunch table toward the exit in order to access the bathroom.

72.     Student 1 then came up from behind V.T. and, without warning, inflicted a brutal attack on her, striking her repeatedly in the back of the head with a steel Stanley cup, causing a large laceration to the back of her head and causing V.T.'s head to bleed profusely.

73.     V.T. fell to the cafeteria floor and got back up, and turned toward Student 1, but Student 1 grabbed V.T.'s hair, pulled V.T. toward her by her hair, and slammed the front of V.T.'s head into a lunch table, causing another laceration to the front of V.T.'s head, as well as swelling and bruising to her face and eye.

74.     Throughout the entire brutal assault and battery in the Pennbrook Middle School cafeteria, which was witnessed by many other 7th grade students in the school cafeteria at that time, Student 1 repeatedly screamed, "I want to fucking murder you!"

75.     Ms. Pierre attempted to split the two students up, by getting in the middle, holding onto V.T. and attempting to physically pull her away from Student 1, while Student 1 continued to hold onto V.T.'s hair and hit V.T..

76.     Student 1 was finally separated from V.T., with a female security guard escorting Student 1 out of the cafeteria in one direction and Ms. Pierre escorting V.T. out of the cafeteria in the opposite direction.

77.     Ms. Pierre escorted V.T. out of the cafeteria while blood gushed from V.T.'s head and dripped down her face and body and onto the floor.

78.    This horrible incident was witnessed by hundreds of students in the Pennbrook Middle School cafeteria, as well as school District employees and other staff.

79.    The Principal of Pennbrook Middle School, Nicholas Taylor, Ed.D., was not present in the school cafeteria when the vicious assault and battery of Pennbrook student, V.T., occurred and was witnessed by many other Pennbrook students.

80.    Following the assault, Ms. Pierre walked V.T. into the bus lobby/hallway outside of the school cafeteria and made V.T. stand there waiting, unassisted, while V.T. was crying and her blood was pooling on the floor of the school hallway.

81.    Ms. Pierre and other administrators, teachers and staff of Defendant School District had V.T. stand in the hallway outside of the cafeteria with her back up against a wall, without providing her any medical care, treatment or assistance until the school nurse, Christina G'Angeli, was called and finally met her there, almost five minutes later.

82.    According to the notes of the school nurse in the Health Office Visit Report, dated April 17, 2024, she found V.T. "clutching multiple bloody paper towels, crying, shaking, and bleeding profusely from the head."

83.    The school nurse, Ms. G'Angeli, reported in the Health Office Visit Report that V.T.'s "face and most of her chest were covered in blood to the point [she] wasn't sure where the source was. Her arms and hands had a significant amount of smeared blood and blood was also on her pants, shoes, and socks …. A 2-inch by 2-inch open area was found just past her forehead hairline."

84.    Shortly after the school nurse and V.T. started walking to the nurse's suite, Ms. Pierre and staff nurse Janice Kerr brought her a wheelchair. Before V.T. got in the wheelchair,

V.T. asked Ms. Pierre why she had let Student 1 into the cafeteria despite her assurances given to V.T. the previous day.

85.     Ms. Pierre pushed the wheelchair while the nurse held gauze to V.T.'s forehead. According to Ms. G'Angeli's notes in the Health Office Visit Report, dated April 17, 2024, after arriving at the nurse's office, the school nurses began cleaning up V.T., assessing for other injuries and an "additional laceration was found about 2 inches back on the crown of [V.T.'s] head. At this time, the ambulance and Upper Gwynedd Police arrived and EMT was allowed to take over care of [V.T.]. While [V.T.] was being assessed by EMT, it appeared that a black eye was forming."

86.     V.T. was taken by ambulance to the emergency room at Grand View Hospital in Sellersville, Pennsylvania, where she remained for four hours. V.T. had a CAT scan, concussion assessment, and three staples to the wounds on her scalp. Her face was swollen, and her forehead was bruised. She was released under concussion protocol.

87.     The brutal and unprovoked attack on V.T. that was witnessed by many students – traumatizing many of those middle school students as well – was captured and recorded by Defendant School District on video surveillance cameras that were in operation that day.

88.     While it is unknown at this point if any of the Pennbrook Middle School students are pursuing claims against Defendant School District, upon information and belief, various students were traumatized from witnessing the brutal assault of V.T., their classmate, in the school cafeteria.

89.     The Pennbrook Middle School cafeteria was on lockdown for approximately twenty-eight minutes immediately after the attack on V.T. occurred.

90.     V.T.'s parents, through legal counsel, requested that Defendant School District provide a copy of the surveillance videos of the assault and battery of V.T., but Defendant School

District has not done so. Defendant School District, through legal counsel, allowed V.T.'s parents and their legal counsel to participate in a Google Meet virtual meeting with Todd Bauer, Ed.D., District Superintendent, and the District's legal counsel, at which time the surveillance videos were shown and replayed, as requested.

91.    At a public meeting of the North Penn Board of School Directors on April 18, 2024, Todd Bauer, Ed.D., District Superintendent, read from a prepared statement which included the following:

> Yesterday at Pennbrook Middle School, a 7th grade student was attacked by another student. The event was deeply disturbing, and a student was taken to a hospital as a result of her injuries. After speaking with the family on multiple occasions over the last 24 hours, I am grateful to share the student returned home last evening, and is recovering.
>
> This should not have happened, period. As an educator, as your superintendent, and as a father, I am appalled by what happened.
>
> We are currently pursuing the details leading up to this incident, and why it occurred. We are also collaborating with our local law enforcement, and their investigation, as we work to ensure that something like this cannot happen again in our schools. Such behavior has no place in our schools. You expect better, we expect better, and certainly I do as well. Every parent has the right to send their child to school and their child to feel safe. As a result of yesterday's incident, I do recognize and understand why some of you do not feel that way this morning…

(See public video of meeting of Board of School Directors of North Penn School District, https://www.youtube.com/watch?v=LKjuwMZZBuA&t=388s, between 5:56 – 7:06).

92.    Defendant School District knowingly and deliberately placed Student 1, a student with a well-known and well-documented history of violent behavior, into the general education environment at Pennbrook Middle School, and by doing so, consciously disregarded a great risk of harm to the student body of Pennbrook Middle School in general and to V.T. in particular, and acted with deliberate indifference to V.T.'s rights and safety.

93.     Defendant School District outrageously failed to protect V.T. from Student 1, a student with a long history of negative peer interactions, aggression and physically violent behaviors in other schools she had previously attended in Defendant School District and who had been recently expelled from the Private School due to extreme behaviors – the same student who was reported by V.T. and other students to have made serious threats to physically harm V.T. and others at school – despite knowing of the risk, knowing that V.T. needed protection, and knowing that Student 1 required substantial supervision, and despite instructing V.T. to go back to class and assuring her that she would be kept safe from Student 1 in school.

94.     In fact, Defendant School District made the disastrous decision on April 17, 2024 and took affirmative steps to physically bring Student 1 into the school cafeteria where V.T. was that day, while allowing Student 1 to carry a steel Stanley cup, without adequately supervising, controlling and monitoring Student 1 and without adequate protections in place to protect V.T., and without the ability to immediately restrain Student 1 when she attacked V.T..

95.     Due to Student 1's history of social, emotional and behavioral health needs and propensity for aggression and violence, and her specific threats of physical harm made against V.T., all of which Defendant School District was aware of prior to the assault and battery of V.T., it was foreseeable that if proper and adequate measures were not in place and enforced on April 17, 2024, that V.T. would be subjected to a physical attack by Student 1.

96.     At a public meeting of the North Penn Board of School Directors on April 18, 2024, during "Public Comments", a parent of a Pennbrook Middle School student stated,

> My daughter went to counselors at nine o'clock in the morning, twice, and told them this attack was coming today, at lunch. It was known … What happened from the time you and your district got the warning, that this attack was coming, to when the attack happened? Because it happened exactly the way she told you it was going to happen.

(See public video of meeting of Board of School Directors of North Penn School District, https://www.youtube.com/watch?v=LKjuwMZZBuA&t=388s, between 14:52 – 15:31).

97.    At a public meeting of the North Penn Board of School Directors on April 18, 2024, during "Public Comments", a student of Pennbrook Middle School described that the Defendant School District had known an attack was coming, stating:

> So Wednesday morning, I went to the guidance counselor, and told her since I was second on the hit list, knowing that there was something that was going to happen. There was a girl she was targeting every day at lunch. And they would go to the counselor and tell them, every day, that this is going to happen…. And when I was at lunch, I was terrified and I told Miss Fattori that that was happening and she said "Don't worry about it, it's not gonna happen."

> But, and early that morning, I was told I was not gonna see [Student 1] for the rest of that week. But I was in lunch and also, I just hear all the screaming and everybody running, and I see [Student 1] running in after somebody and everyone screaming and running. But the girl who got attacked was, didn't see it cause she was faced backwards. And all of a sudden, you just hear these terrible, like, loud bangs of the Stanley bouncing off her head. And then you see [Student 1] grabbing her hair and hitting her against the table and just repeatedly hitting her with the Stanley. There was blood going everywhere. I was at the table right behind and all you see is blood everywhere…

> You say in your email that it was eight minutes but we timed it. It was 28 minutes. And we had to sit in there and watch them clean up her blood off those tables and ground, and we had to watch them take her out with blood dripping down her face. And I will never forget. And laying in bed last night, I just kept repeating in my head. And we shouldn't have had to sit there and just watch that, watch them clean up her blood with a mop, watch her repeatedly yelling that "I'm gonna murder you" and just hitting her with the Stanley.

> And I don't get how like that, you couldn't have stopped it. It was five hours from when I told you it was gonna happen and when it happened, it was five full hours. I don't get how you couldn't have stopped it. And how Ms. Fattori said, "Don't worry, it's not gonna happen. We have her under control." But clearly you didn't.

(See public video of meeting of Board of School Directors of North Penn School District,

https://www.youtube.com/watch?v=LKjuwMZZBuA&t=388s, between 16:25 and 19:02).

98.     Upon information and belief, parents of other Pennbrook Middle School students contacted Defendant School District multiple times during the two days prior to the attack on V.T. and reported threats of physical violence against Pennbrook students made by Student 1. During at least one of these communications, Defendant School District staff assured the parent who reported the threat that the matter was being handled and taken care of by them.

99.     Defendants created an opportunity for Student 1 to brutalize V.T. that day, given the fact that:

     a.  The only reason Student 1 was even attending Pennbrook Middle School that day was because Defendant School District, through its Director of Special Education, Defendant McGee-Heim and other administrators, teachers and staff, had improperly placed Student 1 at Pennbrook Middle School two days prior, on April 15, 2024, without developing an IEP, and without convening an IEP meeting, and without conducting any reevaluation, after Student 1's recent expulsion from the Private School due to extreme behaviors, even though they knew Student 1 had significant social, emotional and behavioral health needs and required greater (not less) emotional and behavioral support and an alternative out-of-District program and placement; and

     b.  The only reason Student 1 was in the school cafeteria on that day – a day where Defendant School District required Student 1 to spend the morning in the office and restricted Student 1 from attending any of her morning classes – was because Defendant School District made the disastrous and improper decision to bring Student 1 into the cafeteria during the 7th grade lunch period, the same

lunch period as V.T.'s, and allowed Student 1 to go into the cafeteria, while carrying a steel Stanley cup, without adequate supervision and protections in place to protect V.T.; and

c. The only reason V.T. attended lunch in the school cafeteria that day was due to the assurances that she and her parents received from Defendant School District, through Ms. Fattori and/or Ms. Pierre, that they would investigate the reported threats made by Student 1 against V.T. and that V.T. would be kept safe from Student 1.

100.    The harm caused to V.T. by Student 1 was foreseeable, predictable, and direct. Defendant School District knew or should have known that taking these affirmative actions, while also failing to implement and enforce adequate protective measures and failing to take sufficient action to protect V.T. from Student 1, would result in an attack and severe injuries to V.T..

101.    Based on Student 1's history of social, emotional and behavioral health needs and her known propensity for violence and acts of physical violence, on the specific threats of physical harm made by Student 1 about V.T., and on the conduct of Defendant School District, as aforesaid, there existed a relationship between Defendant School District and V.T. such that V.T. was a foreseeable victim of Student 1's acts.

102.    Had Defendants not affirmatively used their authority to improperly place Student 1 at Pennbrook Middle School after her recent expulsion from the Private School, to bring Student 1 into the same lunch period as V.T. that day while leaving Student 1 unsupervised and V.T. unprotected; and to instruct V.T. to attend her classes on the basis of Defendant School District's assurances that V.T. would be kept safe from Student 1 – thus exposing V.T. to the significant

danger presented by Student 1 – this attack never would have occurred. Defendants' affirmative use of their authority in these ways created a danger to V.T..

103.    Defendants were not confronted with a hyper-pressurized environment and had the time and opportunity to make unhurried judgments concerning whether to place Student 1 in the general education setting at Pennbrook Middle School without implementing required and/or appropriate safeguards or protections, concerning whether to instruct V.T. to attend classes/lunch despite the specific threats made by Student 1, and concerning how to protect V.T. and how to develop, implement, and enforce sufficient and adequate protective measures in light of the known and obvious risks presented by Student 1.

104.    Based on the facts alleged herein, Defendant School District acted with deliberate indifference to and willful disregard of V.T.'s health, safety and welfare.

105.    Based on the facts alleged herein, Defendant School District consciously disregarded a great risk of harm to V.T..

106.    Based on the facts alleged herein, Defendant School District acted with a degree of culpability that shocks the conscience.

107.    As a direct and proximate result of previously described actions and inactions, negligence, gross negligence, recklessness, and deliberate indifference to V.T.'s constitutional rights by Defendants, V.T. suffered and is suffering from severe and disabling injuries, including but not limited to: a concussion; swelling and bruising of her eye and forehead; lacerations to the front and back of her head, which required three staples and caused physical scarring; post-concussion syndrome; anxiety; depression; post-traumatic stress disorder; irritability; slowed motor activity; fatigue; altered sleep patterns; impaired concentration; difficulty with following conversations; sensitivity to noise; decreased appetite; social isolation; mental, psychological, and

emotional injuries and pain and suffering; physical pain and suffering; loss of earning capacity; loss of life's pleasures, past, present and future; hospital, medical and rehabilitation expenses past, present and future, including medical equipment, supplies, and other medical care and treatment; other psychological, neurological, and psychiatric injuries, the full extent of which is yet to be determined and some or all of which may be permanent in nature.

108.    As a direct and proximate result of the conduct of Defendants, V.T. has in the past required, continues to require, and may in the future require, medical and mental health treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure her condition.

109.    As a direct and proximate result of the conduct of Defendants, V.T. has in the past, and continues to suffer pain, disfigurement and scarring.

110.    As a direct and proximate result of the conduct of Defendants, V.T. has in the past, and continues to suffer loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on her ability to engage in normal activities and pleasures of life, and other intangible losses, because, among other things, V.T. has been forced to live with being the victim of this brutal physical attack that was witnessed by her friends, many other students, District staff, District administrators, law enforcement personnel, and other third-parties, which was reported by many local and national news media outlets and discussed extensively on social media, and which was repeatedly addressed publicly at public meetings of the Board of School Directors of North Penn School District. Sadly, V.T. will be forced to live with this for the rest of her life.

111.    As a direct and proximate result of the conduct of Defendants, V.T. has been prevented and will be prevented in the future from performing her usual activities and avocations and may suffer a loss of earning capacity in the future.

112.    As a direct and proximate result of previously described actions and inactions, negligence, gross negligence, recklessness, and deliberate indifference to V.T.'s constitutional rights by Defendants, V.T.'s family, including her parents and her younger sister, A.T., have been significantly affected by this incident, traumatized by what happened to V.T., and overwhelmed and worried about whether the school environment is safe for V.T. and A.T..

113.    Upon information and belief, following the assault of V.T., Student 1 was criminally charged, and, at the subsequent juvenile detention hearing, Student 1 reportedly attacked a sheriff's deputy with a water jug.

114.    Student 1 was homeschooled for the remainder of the 2023-2024 school year.

115.    Upon information and belief, various restrictions were imposed on Student 1, including no direct or indirect contact or communications with the victim, V.T., in person or on social media.

116.    Upon information and belief, Defendant School District conducted an investigation into what had occurred, which included interviewing V.T.'s parents, teachers, and students about the three days leading up to the physical assault and battery of V.T..

117.    Upon information and belief, as a result of the school's investigation, Defendant School District's Director of Special Education, Defendant McGee-Heim, was disciplined and/or terminated by Defendant School District.

118.    Upon information and belief, Defendant School District subsequently hired a third-party investigator, specifically a law firm, to conduct an "investigation" of what had occurred and the decisions that were made leading to the physical assault and battery of V.T..

119.    Defendant School District publicly assured the North Penn community, including V.T. and her parents, that the third-party investigator it hired was "independent" and would have no affiliation with the Defendant School District.

120.    While Defendant School District also assured the community, including V.T. and her parents, that the results of the investigation would be shared with the community, this was not true, as Defendant School District has failed and/or refused to share the report, even in a redacted form, or the specific results of the investigation with the community, by improperly asserting attorney-client confidentiality and contending that the report and investigation are protected from any disclosure.

121.    Plaintiff V.T. and her parents, through legal counsel, requested that Defendant School District provide them with a copy of the report issued by the law firm hired to conduct the investigation. To date, Defendant School District has failed to provide a copy of this report, in a non-redacted or redacted form, although the report has been provided to the Defendant School District's Superintendent, various District administrators, the District's Solicitor, members of the Board of School Directors of the North Penn School District, and, upon reasonable information and belief, to an insurance company that provided liability insurance coverage of Defendant School District.

122.    Plaintiff V.T., through legal counsel, requested production of V.T.'s educational records by Defendant School District on June 14, 2024 and sent follow up emails on August 1,

2024, August 9, 2024 and August 21, 2024 to Defendant School District, through legal counsel seeking these records.

123.    An incomplete educational records response was provided by Defendant School District, through legal counsel, on August 22, 2024.

124.    Plaintiff filed a complaint with the Pennsylvania Department of Education, Bureau of Special Education, on November 27, 2024 alleging that Defendant School District failed to produce V.T.'s educational records as required by law.

125.    The Pennsylvania Department of Education, Bureau of Special Education, issued a Complaint Investigation Report dated January 24, 2025, in which it concluded:

NPSD was unable to demonstrate compliance with 22 Pa. Code §15.9. Confidentiality, specific to:

(3) Provide access to educational records of the student to the parents or a representative of the parents.

(4) Comply with section 513(a) of the Family Educational Rights and Privacy Act of 1974 (20 U.S.C.A. § 1232g) and 34 CFR Part 99 (relating to family education rights and privacy).

The Complainant requested Student's educational records on June 14, 2024, sent a follow-up email on August 1, 2024, August 9, 2024, and August 21, 2024.

Incomplete student records were sent to the Complainant on August 22, 2024. After a complaint was filed with BSE, additional student records were turned over on January 9, 2025.

Student records were incomplete and not accessible to the Complainant within a timely manner.

126.    The Pennsylvania Department of Education, Bureau of Special Education, ordered the following corrective action by Defendant School District:

NPSD must develop an Administrative Regulation/Procedure to go along with Board Policy 216. If not included in the Administrative Regulations, a separate procedure with checklist of timelines, departments, roles and responsibilities should be developed to identify a process that will ensure an accurate collection of student records within a timely manner. A copy of Administrative Regulations and/or procedures shall be submitted to BSE by March 31, 2025. Additionally, all administrative staff shall receive training on the process for Parent record request and timelines. A copy of the training agenda and sign in/attendance sheets shall be submitted to BSE by March 31, 2025.

127.    Defendant School District has also taken actions which were intended to deter Plaintiff from gathering information regarding the circumstances of the attack on V.T. in the school cafeteria at Pennbrook Middle School on April 17, 2024 and the circumstances that led to that attack occurring and to deter Plaintiffs' desire to pursue legal claims against Defendant School District on behalf of V.T., the victim of this attack.

## COUNT I

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAIM FOR INJURY AS A RESULT OF A STATE-CREATED DANGER ENFORCEABLE PURSUANT TO 42 U.S.C. § 1983

### Plaintiff v. Defendant North Penn School District

128.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

129.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendant School District that resulted in the injuries suffered by V.T..

130.    All acts taken by Defendant School District were taken under color of law as defined by 42 U.S.C. § 1983, were under the pretense and color of law in their official capacity, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations and/or usages of Defendant School District and/or the Commonwealth of Pennsylvania.

131. More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights to be free from state created dangers which caused harm to her bodily integrity and human dignity, and which are protected by the United States Constitution.

132. Defendant School District affirmatively used its authority in a way that created a danger to V.T. and/or rendered V.T. more vulnerable to the danger presented by Student 1 than she would have been had Defendant School District not acted at all.

133. It was an unreasonable and unacceptable violation of Defendant School District's duties and responsibilities to improperly place Student 1 in the general education environment at Pennbrook Middle School after her recent expulsion from the Private School, and to do so without implementing appropriate safeguards or protections, and then to instruct V.T. to attend her classes on the basis of Defendant School District's assurances that V.T. would be kept safe from Student 1, despite not developing, enacting, and/or enforcing sufficient and adequate protective measures, and then to bring Student 1 into the cafeteria during the same lunch period as V.T. following reported threats made by Student 1 of physical harm to V.T..

134. Defendant School District's actions created and/or increased the risk of harm to V.T..

135. Given the well-documented history of extreme physically aggressive and violent behaviors and given the direct threats made by Student 1 specifically about V.T., all of which Defendant School District had specific knowledge of, it was clearly foreseeable to Defendant School District that placing Student 1 at Pennbrook Middle School, and to do so without implementing appropriate safeguards or protections, causing V.T. to attend classes and lunch despite Student 1's repeated threats of harm, and bringing Student 1 into the same cafeteria at the

same time as V.T. without adequate supervision and protections in place would expose V.T. to a substantial risk of serious harm.

136.    V.T. was a foreseeable victim because she was a precise member of the class of persons Defendant School District had the power, ability, and authority to protect – and, specifically, as described herein, Defendant School District knew of the long history of physically aggressive behaviors carried out by Student 1, and the specific threats of physical harm to V.T. specifically, and Defendant School District instructed V.T. to attend class despite knowing or having reason to know that V.T. would be subjected to vicious physical abuse and attacks by Student 1 and despite knowing that adequate measures were not taken to protect V.T.

137.    At all times relevant hereto, Defendant School District was aware of and acted with deliberate indifference to the extreme and unacceptable dangers posed to V.T. by Student 1's attendance at Pennbrook Middle School and by her presence in the school cafeteria that day without adequate supervision and protections in place.

138.    Through its conduct described herein, Defendant School District acted with a degree of culpability that shocks the conscience and acted with deliberate indifference to and willful disregard of V.T.'s health, safety, and rights.

139.    As a result of the long history of physically aggressive and violent behaviors carried out by Student 1, and the specific, direct threats made by Student 1 against V.T., and Defendant School District's knowledge of same, a relationship existed between Defendant School District and V.T. such that V.T. was a foreseeable victim of Student 1's acts.

140.    As a direct and proximate result of Defendant School District's unconstitutional acts as described herein, V.T. suffered severe injuries and violation of her Constitutional rights as described and averred herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant North Penn School District in a sum in excess of the jurisdictional threshold in compensatory damages, delay damages, and for all other damages as may be permitted pursuant to applicable law, together with interest, costs and attorney's fees pursuant to 42 U.S.C. § 1988(b).

## COUNT II

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAIM FOR INJURY AS A RESULT OF A STATE-CREATED DANGER ENFORCEABLE PURSUANT TO 42 U.S.C. § 1983

### Plaintiff v. Defendant McGee-Heim, individually and in her official capacity

141.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

142.    All acts taken by Defendant McGee-Heim, as described in this Complaint, were taken under color of law, as defined by 42 U.S.C. § 1983, in her official capacity of Director of Special Education, Director of Special Education and Student Services, and/or Director of Secondary Special Education and Student Services,  for the Defendant School District, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations and/or usages of Defendant School District and/or the Commonwealth of Pennsylvania.

143.    Defendant McGee-Heim affirmatively used her authority in a way that created a danger to Plaintiff V.T. and/or rendered Plaintiff V.T. more vulnerable to the danger presented by Student 1 than she would have been had Defendant McGee-Heim not acted, as described in this Complaint.

144.    Defendant McGee-Heim knowingly and deliberately and personally placed Student 1, a student with a well-known and well-documented history of physical aggression and violent behavior in school into the general education environment at Pennbrook Middle School on or

31

around April 15, 2024, and did so without implementing appropriate safeguards or protections, without developing or revising an IEP, without convening an IEP meeting, without conducting a psycho-educational reevaluation, with conducting a functional behavior assessment, and without issuing a NOREP, after Student 1's recent expulsion from the Private School due to extreme behaviors, even though she knew Student 1 had significant social, emotional and behavioral health needs and required greater (not less) emotional and behavioral support and an alternative out-of-District program and placement.

145.    Defendant McGee-Heim was personally aware, based on prior aggressive and violent incidents, disciplinary records, evaluations, and other educational records, and the recent expulsion from the Private School, that Student 1 posed a significant and specific danger to other students, including Plaintiff V.T..

146.    By affirmatively and personally authorizing, approving and/or and directing Student 1's placement in the general education environment at Pennbrook Middle School under these conditions, and continuing her placement there through April 17, 2024, despite reports of Student 1's extreme and physically threatening behaviors toward V.T. and other students at Pennbrook Middle School while she was attending school there, Defendant McGee-Heim created and substantially increased the risk that Plaintiff V.T. would be subjected to physical harm.

147.    Defendant McGee-Heim acted with deliberate indifference to that known and obvious risk.

148.    Through the conduct described herein, Defendant McGee-Heim acted with a degree of culpability that shocks the conscience and acted with deliberate indifference to and willful disregard of V.T.'s health, safety, and rights.

149.    The acts and omissions of Defendant McGee-Heim represent reckless, wanton, malicious, intentional and/or willful conduct within the meaning of 42 U.S.C. § 1983.

150.    The acts and omissions of Defendant McGee-Heim represent deliberate indifference to the protected constitutional rights and liberty interests of Plaintiff V.T., to be free from injury to human dignity and bodily integrity.

151.    The acts and omissions of Defendant McGee-Heim represent conduct which was intentional, willful, outrageous, reckless, and deliberately indifferent to the health, safety and welfare of the student body of Pennbrook Middle School in general and to Plaintiff V.T. in particular.

152.    As a direct and proximate result of the acts or omissions of Defendant McGee-Heim, Plaintiff V.T. was violently assaulted and attacked by Student 1, causing Plaintiff V.T. to suffer severe physical and emotional injuries, thereby depriving Plaintiff V.T. of her constitutional right to human dignity and bodily integrity under the 14th Amendment, and she has suffered and will continue to suffer in the future from the effects of severe psychological trauma, including depression and anxiety attacks, physical injuries, loss of self-esteem, mental anguish, embarrassment, and humiliation.

**WHEREFORE**, Plaintiff demands judgment against Defendant McGee-Heim in a sum in excess of the jurisdictional threshold in compensatory damages, delay damages, and for all other damages as may be permitted pursuant to applicable law, together with interest, costs and attorney's fees pursuant to 42 U.S.C. § 1988(b).

## COUNT III

***MONELL* – MUNICIPAL LIABILITY: VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO HUMAN AND BODILY INTEGRITY ENFORCEABLE PURSUANT TO 42 U.S.C. § 1983**

### Plaintiff v. Defendant North Penn School District

153. Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

154. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendant School District that resulted in the injuries suffered by V.T.

155. Defendant School District is a state actor as defined in 42 U.S.C. § 1983.

156. All acts taken by Defendant School District were taken under color of law defined by 42 U.S.C. § 1983, were under the pretense and color of law in their official capacity, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations, and/or usages of Defendant School District and/or the Commonwealth of Pennsylvania.

157. Defendant School District is a municipal entity that is subject to suit pursuant to 42 U.S.C. §1983.

158. At all times relevant hereto, Plaintiff V.T. possessed a liberty interest in the freedom from injury to human dignity and bodily integrity, which rights are secured under the 4th and 14th Amendments to the Constitution of the United States, and by 42 U.S.C. §1983.

159. Defendant School District is responsible for all facets of school operations and programs in the Defendant School District, including the staffing and training of key positions (such as a administrators) and the provision of security for its students. To that end, it maintains

policies and customs regarding student-on-student threats and violence, the reporting and prompt investigation of complaints of student-on-student threats and violence and disciplinary actions.

160.    Defendant School District is also responsible for the provision of special education programming for students with disabilities who reside within the boundaries of the District in compliance with federal and state law. To that end, it maintains policies and customs regarding the provision of special education to students with disabilities, including the proper placement of students with disabilities in educational placements that meet their needs. Defendant School District is responsible for ensuring that its employees are properly trained and supervised to perform their jobs.

161.    Defendant School District developed policies, practices, plans, and procedures and took actions and/or failed to act in ways in violation of the Constitution of the United States and which were contrary to Federal protection of the safety, rights, health, and welfare of Plaintiff V.T., and/or failed to develop policies, practices, plans, and procedures that were in accord with the Constitution of the United States and Federal protection of the safety, rights, health and welfare of Plaintiff V.T..

162.    It was an unreasonable and unacceptable violation of Defendant School District's duties and responsibilities to improperly place Student 1, a special education student with severe social, emotional and behavioral needs, who engaged in aggression and violent behaviors in school, in the less restrictive general education environment at Pennbrook Middle School after her recent expulsion for severe behaviors from the Private School, a private school for students with behavioral health and/or special education needs, particularly without implementing appropriate safeguards and protections to protect the students at Pennbrook Middle School.

163.    It was an unreasonable and unacceptable violation of Defendant School District's duties and responsibilities to instruct Plaintiff V.T., after having reported threats of physical harm from Student 1, to return to her classes on the basis of Defendant School District's assurances that V.T. would be kept safe from Student 1, despite not developing, enacting, and/or enforcing sufficient and adequate protective measures.

164.    It was an unreasonable and unacceptable violation of Defendant School District's duties and responsibilities to physically bring Student 1 into the cafeteria during V.T.'s lunch period knowing there were multiple reports of Student 1 having made threats of physical harm to various students, including Plaintiff V.T., without having appropriate supervision and protections in place to keep Plaintiff V.T. and the other students safe.

165.    Given the long well-documented history of physical aggressive behaviors carried out by Student 1, and the recent specific threats of physical harm made by Student 1 about Plaintiff V.T., all of which Defendant School District was aware of, it was clearly foreseeable to Defendant School District that causing Student 1 to return to the general education environment without proper special education supports in place, that causing Plaintiff V.T. to return to class/lunch after reporting serious threats made against her, and then physically bringing Student 1 into the cafeteria where Plaintiff V.T. was present without implementing adequate supervision or protective measures would expose Plaintiff V.T. to a substantial risk of serious harm.

166.    Despite Defendant School District's knowledge and the clear foreseeability of harm to Plaintiff V.T. by Student 1, Defendant School District failed to take reasonable steps and enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm.

167. The training, supervisory, oversight, management, and disciplinary failures of Defendant School District, as described in this Complaint, demonstrate that Defendant School District failed to properly train and supervise it employees, which was a moving force in the deprivation of Plaintiff V.T.'s constitutional rights.

168. Defendant School District's failure to properly train its employees adequately and failure to supervise its employees properly is evidenced by Defendant School District's officials improperly placing Student 1 in the general education setting at Pennbrook Middle School after her recent expulsion from the Private School, instructing Plaintiff V.T. to attend her classes on the basis of Defendant School District's assurances that Plaintiff V.T. would be kept safe from Student 1 despite not developing, enacting, and/or enforcing an adequate plan or procedures, and affirmatively bringing Student 1 into the same lunch period as V.T. following reported threats of physical harm without adequate protections in place.

169. Defendant School District's failure to properly train its employees adequately and failure to supervise its employees properly is evidenced by Defendant School District's officials failing to put in place policies and procedures to keep Plaintiff V.T. safe at school despite knowing that Plaintiff V.T. was the specific target of threats made by Student 1.

170. Defendant School District's failure to properly train its employees adequately and failure to supervise its employees properly is evidenced by its employees allowing a student, Student 1, to repeatedly threaten and then to viciously physically attack another student, Plaintiff V.T. at school.

171. Defendant School District's conduct and its training, supervision, and disciplinary failures demonstrate that Defendant School District failed to enforce and promulgate appropriate written policies relevant to the conduct described herein, failed to oversee its employees, failed to

investigate the conduct of its employees, and, ultimately, ratified the wrongful conduct of its employees which was a moving force in the deprivation of V.T.'s constitutional rights.

172.    The conduct described herein, demonstrates that Defendant School District tacitly approved, ratified a culture, and established a custom of unlawful and unconstitutional conduct, which was a moving force in the deprivation of V.T.'s constitutional rights.

173.    Defendant School District was not confronted by a hyper-pressurized environment requiring hurried deliberation and instead had the time and opportunity needed to make its determinations, and to develop, enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm to Plaintiff V.T.. Extensive and thoughtful deliberation by Defendant School District was possible.

174.    Through its conduct described herein, Defendant School District acted with a degree of culpability that shocks the conscience and acted with deliberate indifference to and willful disregard of V.T.'s health, safety, and rights.

175.    At all times relevant hereto, Defendant School District was aware of and acted with deliberate indifference to the extreme and unacceptable dangers posed by Student 1 to Plaintiff V.T., without adequate supervision and protective measures.

176.    As a result of the long history of physically aggressive and violent behaviors carried out by Student 1, and specific threats against Plaintiff V.T., Defendant School District's knowledge of same, a relationship existed between Defendant School District and Plaintiff V.T. such that Plaintiff V.T. was a foreseeable victim of Student 1's acts.

177.    As a direct and proximate result of Defendant School District's unconstitutional acts as described herein, Plaintiff V.T. suffered the severe injuries and violation of her Constitutional rights as described and averred herein.

178.    Defendant School District knew or should have known that its actions and/or inactions would result in injury to and denial of constitutional rights of V.T.

179.    As a direct and proximate result of Defendant School District's negligence, gross negligence, reckless conduct, willful and wanton disregard for the safety of Plaintiff V.T., and deliberate indifference to the health and safety of Plaintiff V.T., Plaintiff V.T. was caused to suffer the severe injuries and damages alleged herein and the deprivation of her liberty interest and was caused to suffer injury to her human dignity and bodily integrity, without due process of law guaranteed by the 14th Amendment of the United States Constitution and in violation of Plaintiff V.T.'s 4th Amendment rights.

180.    Defendant School District's denial and violation of Plaintiff V.T.'s rights under the 4th and 14th Amendments to the United States Constitution was egregious, irrational and objectively unreasonable.

**WHEREFORE**, Plaintiff demands judgment against Defendant, North Penn School District, in a sum in excess of the jurisdictional threshold in compensatory damages, delay damages, and for all other damages as may be permitted pursuant to applicable law, together with interest, costs and attorney's fees pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

DATED: <u>October 30, 2025</u>                **TIMONEY KNOX, LLP**

                            BY    /s/ *Scott H. Wolpert*

                            Scott H. Wolpert, Esquire (PA 62894)
                            Christine M. Gordon, Esquire (PA 209391)
                            400 Maryland Drive
                            Fort Washington, PA 19034-7544
                            swolpert@timoneyknox.com

39

cgordon@timoneyknox.com
Tel. No.: 215-540-2656
Attorneys for Plaintiff