**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| V.T., a minor, by and through her parents, | : | |
| M.E.T. and M.J.T. | : | |
| | : | |
| vs. | : | Civil Action No. 25-6189 |
| | : | |
| North Penn School District and | : | |
| Megan McGee-Heim, individually and in | : | |
| her official capacity | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2026, upon

consideration of Defendants, North Penn School District and Megan McGee-Heim's Motion to

Dismiss Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED**

that Defendants' Motion is **GRANTED**.

It is **ORDERED** and **DECREED** that Plaintiffs' Complaint against North Penn School

District and Megan McGee-Heim is **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| V.T., a minor, by and through her parents, | : | |
| M.E.T. and M.J.T. | : | |
| | : | |
| vs. | : | Civil Action No. 25-6189 |
| | : | |
| North Penn School District and | : | |
| Megan McGee-Heim, individually and in | : | |
| her official capacity | : | |

<u>**DEFENDANTS, NORTH PENN SCHOOL DISTRICT AND MEGAN MCGEE-HEIM'S**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

Defendants, North Penn School District and Megan McGee-Heim, by and through their

counsel, Marshall Dennehey, P.C., respectfully move to dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  In support thereof, North Penn School District and

Megan McGee-Heim submit the attached Memorandum of Law.

Respectfully submitted,
**MARSHALL DENNEHEY, P.C.**

BY: _____
LEE C. DURIVAGE
Attorney ID No. 205928
2000 Market Street, Suite 2300
Philadelphia, PA 19103

Attorneys for Defendants: North Penn
School District and Megan McGee-Heim

Dated:  January 6, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| V.T., a minor, by and through her parents, | : | |
| M.E.T. and M.J.T. | : | |
| | : | |
| vs. | : | Civil Action No. 25-6189 |
| | : | |
| North Penn School District and | : | |
| Megan McGee-Heim, individually and in | : | |
| her official capacity | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, NORTH PENN SCHOOL DISTRICT AND MEGAN MCGEE-HEIM'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.    INTRODUCTION

Defendants, North Penn School District and Megan McGee-Heim ("Defendants"), by and through their counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, Defendants aver as follows:

## II.    FACTUAL BACKGROUND

Plaintiff V.T., minor ("Plaintiff") filed a Complaint, by and through her parents, M.E.T. and M.J.T., on October 30, 2025 that asserts the following claims: Count I, Violations of the United States of America's Constitution Under Amendment Fourteen Due Process Claim for Injury as a Result of a State-Created Danger Enforceable Pursuant to 42 U.S.C. § 1983, against Defendant North Penn School District; Count II, Violations of the United States of America's Constitution Under Amendment Fourteen Due Process Claim for Injury as a Result of a State-Created Danger Enforceable Pursuant to 42 U.S.C. § 1983, against Defendant McGee-Heim, individually and in her official capacity; Count III, *Monell* – Municipal Liability: Violations of the United States of

America's Constitution Under Amendment Fourteen Due Process Clause for Injury to Human and Bodily Integrity Enforceable Pursuant to 42 U.S.C. § 1983. *See generally,* Plaintiff's Complaint (ECF Doc. No. 1).

Plaintiff, a minor, was a twelve year old female who was in 7th grade at Pennbrook Middle School ("Pennbrook") during the 2023-2024 school year. ***ECF #1*** at ¶ 18. Pennbrook is a middle school in the Defendant North Penn School District ("NPSD") for students in grades 7, 8, and 9 who are generally between the ages of 12 and 15. ***Id.*** at ¶¶ 14, 19. On or about Monday, April 15, 2024, another 7th grade minor female, A.B., transferred to Pennbrook to attend the school as a new student. ***Id.*** at ¶ 20. A.B. had previously been identified as a student with disabilities and had an Individualized Education Program(s) ("IEP") to support her challenges. ***Id.*** at ¶ 21. The Complaint alleges that A.B. previously attended other schools in the NPSD prior to transferring to Pennbrook. ***Id.*** at ¶ 22. Most recently, before transferring to Pennbrook, A.B. attended a private school for students with special needs pursuant to a Notice of Recommended Educational Placement ("NOREP"). ***Id.*** at ¶ 24. During the relevant time period, Defendant Megan McGee-Heim was the Director of Special Education & Student Services for NPSD. ***Id.*** at ¶ 15.

The unforeseeable, unfortunate incident that gives rise to the claims described in Plaintiff's Complaint occurred on April 17, 2024. *See generally*, Plaintiff's Complaint. Around 1:15 p.m. on April 17, 2024 date, Plaintiff was in the cafeteria after finishing her lunch and had gotten up to go to the bathroom with another student. ***Id.*** at ¶ 69. Plaintiff claims that A.B. entered the cafeteria and separated from the climate coordinator, Ms. Pierre, and "charged" towards Plaintiff and struck her repeatedly on the back of the head with a "Stanley" brand cup, causing a laceration and bleeding to Plaintiff's head. ***Id.*** at ¶¶ 69-72. Plaintiff also claims that she fell to the floor as a result of the strikes with the Stanley cup and when she got back up, A.B. pulled her hair and

slammed the front of her head on the lunch table, causing another laceration on the front of Plaintiff's head as well as swelling and bruising to her face and eye.  *Id.* at ¶ 73.  Plaintiff also claims that multiple other 7th grade students witnessed the incident in the cafeteria, as well as A.B. yelling "I want to f***ing murder you!" *Id.* at ¶ 74.  Ms. Pierre attempted to separate Plaintiff and A.B. but was unsuccessful until a female security guard arrived and took A.B. out of the cafeteria in one direction and Ms. Pierre took Plaintiff in the opposite direction. *Id.* at ¶¶ 75-76.

Plaintiff claims that Defendant NPSD knowingly and deliberately put A.B. in the "general education environment" of Pennbrook and consciously disregarded the risk of harm to students, including Plaintiff, and acted with deliberate indifference to Plaintiff's rights and safety. *Id.* at ¶ 92.  Plaintiff's Complaint claims that Defendant NPSD knew of A.B.'s "long history of negative peer interactions, aggression and physically violent behaviors in other schools," including an alleged expulsion from a private school.  *Id.* at ¶ 93.  Plaintiff also claims that she and other students reported to Pennbrook administrators between April 15 and 17 that A.B. had made "serious threats to physically harm" Plaintiff and others at Pennbrook.  *Id.* at ¶ 93.  Plaintiff concludes that, based upon the foregoing, it was foreseeable to Defendant NPSD that Plaintiff would be physically attacked by A.B. if "proper and adequate measures" were not in place and enforced. *Id.* at ¶ 95.

Specifically, Plaintiff's Complaint claims that Moving Defendants "created an opportunity" for A.B. to harm Plaintiff because Moving Defendants and other administrators, teachers, and staff improperly transferred A.B. to Pennbrook on April 15, 2024 without an IEP or any evaluations.  *Id.* at ¶ 99 a.  Plaintiff also claims that it was improper for Defendant NPSD to allow A.B., a 7th grader, to go to the cafeteria during the 7th grade lunch period with her Stanley cup without "adequate supervision and protections" to protect Plaintiff, even though the Complaint

4

acknowledges that A.B. was accompanied and supervised by Ms. Pierre when she came to the cafeteria. *__Id.__* at ¶ 99 b. Plaintiff's Complaint claims that Defendant NPSD, through Ms. Pierre and/or Ms. Fattori, assured Plaintiff and her parents that alleged threats by A.B. that Plaintiff allegedly reported would be investigated and Plaintiff would be kept safe. *__Id.__* at ¶ 99 c.

While Plaintiff's Complaint now brings claims for state created danger against each Defendant and a *__Monell__* claim against NPSD, it is evident that Plaintiff's claims are deficient as a matter of law and, therefore, must be dismissed with prejudice.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*. The purpose of a 12(b)(6) motion is to test the legal sufficiency of the complaint and to "streamline litigation by dispensing with needless discovery and fact finding." *__Neitzke v. Williams__*, *490 U.S. 319, 326-27 (1989)*; *__Holder v. City of Allentown__*, *987 F.2d 188, 194 (3d. Cir. 1993)*. Therefore, when it appears from the face of the pleading that a plaintiff can prove no set of facts that would entitle him to relief, the court must dismiss plaintiff's claims. *See __Hishon v. King & Spalding__*, *467 U.S. 69, 73 (1984)*.

Further, a complaint may be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *See __Odom v. Erie Ins. Exchange__*, *2008 WL 5188828, at *1 (W.D. Pa. Dec. 10, 2008)*; *see also __Bell Atlantic Corp. v. Twombly__*, *550 U.S. 544 (2007)*; *__Ashcroft v. Iqbal__*, *129 S. Ct. 1937, 1953 (2009)* (stating that the decision in *__Twombly__* "expound[s] the pleading standard for 'all civil actions'). Indeed, the United States Supreme Court has equivocally determined that the pleading standard under Federal Rule of Civil Procedure 8 demands more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *__Iqbal__*, *129 S. Ct. at 1949.*

Moreover, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *__Id.__*  Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *__Id.__*, *citing __Twombly__*, *at 557*; *see also __Evancho v. Fisher__*, *423 F.3d 347, 351 (3d. Cir. 2005) citing __In Re Burlington Coat Factory Sec. Litig.__*, *114 F.3d 1410, 1429-30 (3d. Cir. 1997)* (stating that "a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss").

The Court must conduct a two-part analysis to determine if Plaintiffs' Complaint can survive the instant Motion to Dismiss. *__Fowler v. UPMC Shadyside__*, 578 F.3d 203, 210-211 (3d Cir. 2009).  First, the Court must separate the factual and legal elements of Plaintiffs' claims, accepting all of Plaintiffs' well-pleaded facts as true while disregarding any legal conclusions. *__Id.__* Second, the Court must then determine if the facts alleged in Plaintiffs' Complaint are sufficient to show that Plaintiffs' have a "plausible claim for relief." *__Id.__*  The Complaint "must do more than allege the plaintiff's entitlement to relief" by showing such entitlement with facts. *__Id.__*  In conclusion, in order to defeat a motion to dismiss, a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *__Thompson v. Real Estate Mortg. Network,__* 748 F.3d 142, 147 (3d Cir. 2014). Where, as here, Plaintiff has not alleged a facially plausible claim for her entitlement to relief against Defendants, Plaintiff's Complaint must be dismissed as a matter of law.

## IV.    __ARGUMENT__

### A.    __Plaintiff's Claim Against Defendant McGee-Heim in Her "Official Capacity" Must Be Dismissed__

It is well established that claims against a school district employee in his or her "official capacity" are redundant of claims against a school district.  Specifically, "claims against state

officials in their official capacities merge as a matter of law with the municipality that employs them." ***Brice v. City of York***, *528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007).*

Here, Plaintiff's Complaint asserts claims against Megan McGee-Heim "in both her individual and official capacities." ***ECF #1*** at ¶ 15. Accordingly the claims against Defendant McGee-Heim in her "official capacity" are redundant of claims against NPSD and should be dismissed.

**B.**    **Plaintiff's State Created Danger Claims Fail as a Matter of Law and Must be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

In her Complaint at Counts I and II, Plaintiff asserts a due process "state created danger" claim pursuant to Section 1983 against each Defendant.

A plaintiff asserting a claim under Section 1983 must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States. ***Nicini v. Morra***, *212 F. 3d 798, 806 (3d Cir. 2000).* "The first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying rights said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" ***Id.***, quoting ***Cnty. of Sacramento v. Lewis***, *523 U.S. 833, 841 n. 5 (1998).* Plaintiff's Section 1983 claim rests on the Due Process Clause of the Fourteenth Amendment, which states that a state shall not "deprive any person of life, liberty or property, without due process of law." *U.S. Const. Amd. XIV, § 1.*

Plaintiff invokes the substantive component of due process, which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" ***Collins v. City of Harker Heights***, *503 U.S. 115, 125 (1992).* Of course, the Supreme Court has held that "municipalities have no affirmative duty to protect people from violence at the hands of private individuals." ***Kelly v. Bristol Township Sch. Dist.***, *2019 WL*

7

*6698210, \*2 (E.D. Pa. 2019), citing **DeShaney v. Winnebago County Dep't of Soc. Servs.***, 489 U.S. 189, 195-196 (1989)*. Notably, the Third Circuit "has observed that **DeShaney** therefore 'stands for the harsh proposition that even though state officials know that a person is in imminent danger from a third party, the Fourteenth Amendment imposes upon those state officials no obligation to prevent them.'" **Id.***, quoting **Horton v. Flenory***, 889 F.2d 454, 457 (3d. Cir. 1989)*. Generally speaking in the school context, "a public school district is not constitutionally obligated to protect its students from student-on-student violence and thus cannot be held liable under 42 U.S.C. § 1983 when such violence occurs." **R.W. by & through Whitehouse v. C.L. through Fluck,** *CV 25-714-KSM, 2025 WL 2434919, \*2 (E.D. Pa. Aug. 22, 2025)* (rejecting state-created danger claim against school district where student was assaulted in locker room by another student, who previously exhibited violent behavior in school).

The Third Circuit, however, does recognize the exceptions to this general rule when "a special relationship exists between the state and plaintiff" or when a "state-created danger occurs." **Kelly v. Bristol Township Sch. Dist.,** *2019 WL 6698210, \*2 (E.D. Pa. 2019)*.   With regard to the "special relationship," the Courts have concluded that "school defendants' authority over [plaintiff] during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*." **Morrow v. Balaski***, 719 F.3d 160, 168 (3d. Cir. 2013), internal citations omitted.* While the Court has concluded that they do not "foreclose the possibility of a special relationship arising between a *particular* school and *particular* students under certain unique and narrow circumstances," the "circumstances must be so significant as to forge a different kind of relationship between a student and a school than that which is inherent in the discretion afforded school administrators as part of the school's traditional in loco parentis

authority or compulsory attendance laws." **_Id._** at 171.  There is no "special relationship" in the case at bar.

  In order to sustain a claim under a "state-created danger" theory, Plaintiffs must plead and prove the following:

> (1)  the harm ultimately caused was foreseeable and fairly direct;

> (2)  A state actor acted with a degree of culpability that shocks  the conscience;

> (3)  A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the  defendants' acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> (4)  A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to the danger than had the state not acted at all.

**_Morrow v. Balaski_**, _719 F.3d 160, 177 (3d. Cir. 2013), citing_ **_Bright v. West Moreland Cnty._**, _443 F. 3d 276, 281 (3d Cir. 2006); see also_ **_Ivers v. Brentwood Borough Sch. Dist._**, _2021 WL 768166, *3 (W.D. Pa. Feb. 26, 2021)_ (noting that plaintiffs must satisfy all four prongs of the test).

  Significantly, courts have routinely dismissed state-created danger claims premised on student bullying. Further, "[t]he Third Circuit has rejected state-created danger claims in cases involving student-on-student school violence, even when school officials were alleged to have known of dangerous conditions within the school or in a particular classroom." **_Pagan v. City of Philadelphia_**, _No. 11-cv-5178, 2012 WL 1965386, at *5 (E.D. Pa. May 31, 2012)_.  In **_Morrow_**, the Third Circuit upheld the dismissal of plaintiffs' state-created danger claims premised on allegations that the students/plaintiffs were harassed, bullied and assaulted by a classmate, even after the classmate was arrested. **_Morrow_**, _719 F.3d at 164-165_.  In rejecting the claims, the Third Circuit noted that plaintiffs' complaint "simply attempts to redefine clearly passive inaction as affirmative

9

acts" and "merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct" to support the fourth prong of the state-created danger test. ___*Id.* at 178-179___; *see also* **___Sanford v. Stiles___**, *456 F.3d 298, 312 (3d. Cir. 2006)* (collecting cases and noting that "[o]ur holding that [plaintiff] has failed to make out a state-created danger claim is consistent with the case law of other circuits that have addressed similar cases involving student suicides").

In **___R.W. by & through Whitehouse___** the Court found that the plaintiff failed to plausibly plead a state created danger claim under Section 1983 where a student was verbally confronted and assaulted in a boys locker room that had no video surveillance or adult supervision. *See,* **___R.W. by & through Whitehouse v. C.L. through Fluck___**, *CV 25-714-KSM, 2025 WL 2434919 (E.D. Pa. Aug. 22, 2025).* In that case, there were multiple assaults that occurred in the locker room prior to the incident in the complaint and the student that assaulted the plaintiff had previously exhibited and was disciplined for violent behavior at school. ___*Id.*___ The Court held that "'maintenance of a situation that was already dangerous' does not amount to an affirmative misuse of authority for purposes of establishing a state-created danger claim against the [s]chool [d]istrict." ___*Id.*___ *at \*4, internal citations omitted.* The Court concluded, "[t]he state-created danger theory gives succor to individuals who are exposed to harm by government conduct; it does not create a right of action in every case where the government 'might have done more to protect a citizen from a risk of harm' the citizen already faced. ___*Id.*___ *at \*6, internal citations omitted.*

Similarly, in **___Montanez-Johnson v. Chester Upland Sch. Dist.,___** the Court held that a student plaintiff had failed to plausibly plead that a school district's decision to allow students to enter a high school through a broken security machine was a departure from the status quo which created a danger to the student or rendered him more vulnerable to danger had the district not acted

at all.  *See **<u>Montanez-Johnson v. Chester Upland Sch. Dist.</u>**, 762 F.Supp.3d 433 (E.D. Pa. 2025).*
In that case, plaintiff was stabbed in the arm by a classmate during a lunch period.  The plaintiff
claimed that the attacking student was able to bring the knife into the school because the metal
detectors and x-ray machines at the school were malfunctioning.  The plaintiff also alleged that
the school district knew of other prior incidents where students tried to bring weapons into the
school and either knew or should have known that security machines were not working, and despite
this, failed to fix them or take other precautions.  The Court found that plaintiff's claim "stumbles
and falls, among other places, at the fourth element because the School District did not
"affirmatively use[ ] [its] authority in a way that created a danger to [Montanez-Johnson] or that
rendered [him] more vulnerable to danger than had the [School District] not acted at all."  ***<u>Id.</u> at
437.***  The Court concluded that the plaintiff's state created danger claim must be dismissed for
failure to state a claim because the plaintiff did not plead "allegations sufficient to suggest that the
[s]chool [d]istrict 'affirmatively used [its] authority in a way that created a danger to [him] or that
rendered [him] more vulnerable to danger than had [it] not acted at all.'"  ***<u>Id.</u> at 439.***

Where, as here, Plaintiff has not, and cannot, plead facts to support all four prongs of the
state-created danger test and where case law has routinely dismissed similar claims, Plaintiff's
state-created danger claims in Count I and II of the Complaint must be dismissed, with prejudice.

      **1.**     **The Harm Sustained by Plaintiff Was Not a Foreseeable, Direct Result
of Defendants' Alleged Actions.**

In order to establish the foreseeability requirement, Plaintiff must establish "an awareness
on the part of [Defendants] that rises to the level of actual knowledge or an awareness of risk that
is sufficiently concrete to put the actors on notice of the harm." ***<u>Phillips v. County of Allegheny</u>***,
*515 F. 3d 224, 238 (3d. Cir. 2008).*  Further, to establish this requirement "the harm ultimately

caused was a foreseeable and a fairly direct result of the state's actions." ***Morse v. Lower Merion Sch. Dist***., *132 F.3d 902, 908 (3d Cir. 1997)*.

Here, there are simply no facts plead demonstrating any actual knowledge or an awareness of risk by NPSD (or Ms. McGee-Heim). Plaintiff's Complaint has failed to plausibly plead that A.B. attacking Plaintiff with a Stanley cup during the 7th grade lunch period was foreseeable or that Defendants were on notice of the harm. Plaintiff's Complaint states that because A.B. allegedly had a history of violence, placing A.B. in a general education environment, instructing Plaintiff to attend her classes, and then bringing A.B. to the cafeteria, allegedly without "safeguards or protections" or "adequate supervision" "created and/or increased the risk of harm" to Plaintiff. ***ECF #1*** at ¶¶ 133-135. However, the assault by A.B. against Plaintiff was certainly not a foreseeable, fairly direct result of any action Plaintiff attributes to Defendants.

As Plaintiff cannot demonstrate that any harm to her was a foreseeable direct result of Defendants' actions, Counts I and II of Plaintiff's Complaint must be dismissed with prejudice.

### 2. Plaintiff Has Failed to Demonstrate Any Actions that Shock the Conscience.

For Plaintiff to satisfy the second element of her state created danger claims, she must show that the Defendants' acted with a degree of culpability that shocks the conscience. *See **Morrow**, 719 F.3d at 177*; ***Sanford***, *456 F. 3d at 310* (emphasis in original) (clarifying that "in *any* state-created danger case, the state actor's behavior must *always* shock the conscience"). "[T]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case, and depends in particular on 'the extent to which a state actor is required to act under pressure.'" ***Walter v. Pike Cnty., P.A.***, *544 F. 3d 182, 192 (3d. Cir. 2008)* (citations omitted). In a "hyper-pressurized environment," an intent to cause harm is usually required while "in cases where deliberation is possible and officials have some time to make

'unhurried judgments,' deliberate indifference is sufficient." **_Id._**  The Third Circuit has "defined deliberate indifference as requiring a 'conscious disregard of a substantial risk of serious harm.'" **_L.R. v. Sch. Dist. of Philadelphia_**, *836 F.3d 235, 246 (3d Cir. 2016)*.  Further, "'deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known.'" **_Id._**  Furthermore, "mere negligence is not enough to shock the conscience." **_County of Sacramento v. Lewis_**, *523 U.S. 833 (1998)*.  This prong is a high threshold to satisfy and will often decide the case.  **_Sanford_**, *456 F. 3d at 305*.

In this case, no action of Defendants stated in Plaintiff's Complaint rises to the level of deliberate indifference.  Plaintiff merely recites the elements of a state created danger claim in her Complaint. However, "'[b]ald characterizations of 'deliberate difference' and 'willful disregard' do not transform the underlying omissions to remedy an alleged unsafe condition into arbitrary or conscience-shocking conduct in a constitutional sense.'" **_Estate of Viola v. Twp. of Bensalem_**, *96 F.Supp.3d 466, 470 (E.D. Pa. 2015), citing Brozusky v. Hanover Township, 222 F.Supp.2d 606, 612 (M.D.Pa.2002)*.  There are no allegations in Plaintiff's Complaint that the cafeteria was particularly dangerous or that NPSD was even aware that Plaintiff was in the cafeteria.  Plaintiff's Complaint also does not allege that any specific threats were made relating to the cafeteria or that the Defendants were informed of a specific threat relating to the cafeteria.  No students or parents had complained about the safety of the cafeteria.  The risk Plaintiff is alleging in her Complaint was not so obvious that it should be known.  The Complaint is devoid of any fact or allegation that meets the standard for conscience shocking conduct by Defendants.

As there is nothing plead in Plaintiff's Complaint demonstrating "conscience shocking" actions by Defendants, Counts I and II of Plaintiff's Complaint should be dismissed with prejudice.

### 3.    Plaintiff Has Failed to Plead Any Affirmative Acts By Defendants.

It is well-established that under the fourth prong of the state-created danger test, Plaintiffs must prove that a "state actor affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to the danger than had the state not acted at all." ***Bright***, *443 F. 3d at 281*. Of course, it is equally well-established that a failure to act cannot form the basis of a valid Section 1983 claim. ***Kaucher v. County of Bucks***, *455 F. 3d 418 (3d. Cir. 2006)*. Indeed, courts in the Third Circuit have routinely dismissed state-created danger claims where, as here, the complaint is premised on a school district's alleged failure to address or act on purported bullying concerns.  Further, in ***Sanford***, the Third Circuit reiterated "[a]s we have stated many times, 'mere failure to protect an individual…does not violate the Due Process Clause.'" ***Sanford,*** *456 F.3d at 312*.  The Court in ***Morrow*** concluded that the requirement of an actual affirmative act "serves ... to distinguish cases where ... officials might have done more ... [from] cases where ... officials created or increased the risk itself."  ***Morrow***, 719 F.3d at 179, *internal citations omitted.*

Further, "the Third Circuit has established a two-step analysis to determine the sufficiency of the fourth element of a state-created danger claim as pleaded, which requires the court to (1) "evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred," and (2) "ask whether the state actor's exercise of authority resulted in a departure from that status quo." ***R.W. by & through Whitehouse v. C.L. through Fluck***, *CV 25-714-KSM, 2025 WL 2434919,* at *3 (E.D. Pa. Aug. 22, 2025), *citing L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 243 (3d Cir. 2016); K.W. v. Se. Pa. Transp. Auth., 760 F. App'x 104, 108–09 (3d Cir. 2019).*  Plaintiff's Complaint states no deviation from the status quo during the 7th grade lunch period in the cafeteria.

A.B. was supervised by Ms. Pierre and the Complaint does not allege that normal cafeteria supervision was not present.

Plaintiff's Complaint does not allege any "affirmative act" necessary to support a state created danger claim. Instead, Plaintiff lists alleged omissions by Defendants and generally opines that because Defendants allowed A.B. to go to the cafeteria during the 7th grade lunch period without adequate safeguards, supervision and protections in place, this supports a state-created danger theory of liability. *Id.* at ¶ 135. Plaintiff also makes the unsupported claim in the Complaint that Defendants' decision not to develop, revise, or issue a new IEP, behavior plan, transition plan, safety plan, or NOREP when placing A.B. at Pennbrook "created and substantially increased the risk that Plaintiff would be subjected to physical harm." *Id.* at ¶¶ 34-35. Plaintiff is merely alleging that Defendant NPSD might have done more. However, there is nothing in the Complaint to suggest that Defendant NPSD created or increased any risk. In accordance with the Court's conclusion in ***Morrow***, this is not enough to establish an affirmative act.

The Third Circuit in ***Morrow*** confirmed that "merely restating the Defendants' inaction [relating to bullying] as an affirmative failure does not alter the passive nature of the alleged conduct" to support the fourth prong of the state-created danger test. ***Morrow v. Balaski***, *719 F.3d 160, 178-179 (3d. Cir. 2013).* Of course, other courts throughout Pennsylvania (and throughout the country) have routinely come to the same conclusion and dismissed state-created danger claims when faced with allegations that a school failed to address bullying. *See* ***G.G. v. Penn-Trafford Sch. Dist.***, *813 Fed. Appx. 799, 802 (3d. Cir. 2020)* (affirming dismissal of state-created danger claim premised on student's contention that she reported multiple incidents of bullying that were ignored, reasoning that the Third Circuit has "consistently held [that] inaction does not give rise to an affirmative act" in the context of a state-created danger claim); ***Monn v. Gettysburg Area Sch.***

*Dist.*, 553 Fed. Appx. 120 (3d. Cir. 2014) (accord); *__H.J. v. Delaplaine McDaniel Sch.__*, *2017 WL 5901096, \*3-4 (E.D. Pa 2017)* (rejecting plaintiff's state-created danger claim alleging that school permitted student to be bullied and later injured); *__M.T. v. Uniontown Area Sch. Dist.__*, *2021 WL 807713, \*5 (W.D. Pa. Mar. 3, 2021)* (allegation that school failed to monitor a stairwell was insufficient to establish that the school "engaged in affirmative conduct that created, or increased, the risk of harm, or that made the plaintiff 'more vulnerable' than if the School District had 'stood by and done nothing at all'").

By way of example, the Court in *__P.W.__* held that a school's failure to prevent another student, a known sexual predator who had previously sexually assaulted the plaintiff, from boarding the school bus with plaintiff in light of his previous behaviors towards plaintiff was not an affirmative act. *__P.W. v. Chester Community Charter School__*, *2022 WL 4360050, \*3 (E.D.Pa. 2022)*. The Court concluded that this was fatal to the plaintiff's claim and as such, the Court did not need to address the remaining elements. *__Id.__*; see also *__Hargrove v. City of Philadelphia__*, *2025 WL 3516783, \*7 (E.D. Pa. Dec. 8, 2025)* ("stating that "an affirmative act usually involves 'conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration'" and "the conduct 'should be directed as a discrete plaintiff'").

As in *__P.W.__*, Plaintiff in the case at bar has not alleged any affirmative acts by Defendants. Defendants' alleged failure to prevent A.B. from attending Pennbrook and/or preventing her from going into the cafeteria during the 7th grade lunch period are not affirmative acts. As such, Plaintiff's "state created danger" claim must fail.

The Third Circuit has held that "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *__Bright v. Westmoreland Cnty.__*, *443 F.3d 276, 282 (3d*

*Cir. 2006).*  In the case at bar, Plaintiff's Complaint failed allege any misuse of state authority by NPSD and therefore has not met the fourth element of a state created danger claim.

As Plaintiff has failed to set forth an affirmative act on the part of Defendants, Plaintiff is unable to set forth a state created danger claim and Counts I and II of Plaintiff's Complaint must be dismissed with prejudice.

    **B.**    **Plaintiff's Municipal Liability/*Monell* Claims in Count III Against Defendant NPSD Should be Dismissed**

At Count III, Plaintiff's Complaint alleges "municipal liability" against Defendant NPSD, with conclusory allegations that Defendant NPSD "developed policies, practices, plans, and procedures and took actions and/or failed to act in ways in violation of the Constitution of the United States and which were contrary to Federal protection of the safety, rights, health, and welfare of [Plaintiff], and/or failed to develop policies, practices, plans, and procedures that were in accord with the Constitution of the United States and Federal protection of the safety, rights, health and welfare of [Plaintiff]." ***ECF #1*** at ¶ 161.  Further, among other things, Plaintiff alleges that the " training, supervisory, oversight, management, and disciplinary failures of Defendant School District, as described in this Complaint, demonstrate that Defendant School District failed to properly train and supervise it [sic] employees, which was a moving force in the deprivation of [Plaintiff's] constitutional rights." ***ECF #1*** at ¶ 167.

It is well-established that a municipal entity may be held liable under Section 1983 when its custom or policy causes the alleged constitutional violation. ***Monell v. Dep't of Social Servs. of City of N.Y.****, 436 U.S. 658, 694 (1978)*. In particular, a plaintiff asserting a Monell claim must establish that "(1) [he or] she possessed a constitutional right of which [he or] she was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amounted to deliberate indifference' to [his or] her constitutional right; and (4) the policy [or custom] was the 'moving

17

force behind the constitutional violation.'" ***MGJ v. Sch. Dist. of Phila.***, *2017 WL 2277276, \*7 (E.D. Pa. 2017)*. Indeed, "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was" and if "a plaintiff alleges that he or she was harmed by a custom, as opposed to a formally enacted policy, custom requires proof of knowledge and acquiescence by the decisionmaker." ***Buonadonna v. Southeast Delco Sch. Dist.***, *2015 WL 2365629, \*8 (E.D. Pa. 2015)*. As noted by the Court in ***Buonadonna***, "[f]ailure to allege conduct by a municipal decisionmaker is fatal to a Monell claim." ***Id.***

Under certain circumstances, an unconstitutional custom can consist of a municipality's failure to train or supervise. Indeed, "[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult" and a "plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries." ***MGJ***, *2017 WL 2277276 at \*9*. Significantly, "[w]here a plaintiff alleges that the municipal policy that cause the injury concerned a failure to train, supervise, or discipline, the plaintiff must demonstrate that (1) the failure amounted to a deliberate indifference to the rights of persons with whom the municipal employee comes in contact; and (2) the municipal's policy of failing to train, supervise, or discipline actually caused the constitutional injury." ***Buonadonna***, *2015 WL 2365629, at \*11*; *see also* ***Fuentes v. Sch. Dist. of Phila.***, *2019 WL 1505861, \*11 (E.D. Pa. 2019)* (noting that "deliberate indifference is a stringent standard of fault" and "[o]rdinarily, a pattern of similar constitutional violations is necessary to demonstrate deliberate indifference").

Notably, in order to meet the standard for ***Monell*** liability under a failure to train theory, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need." ***Robinson v. Fair Acres Geriatric Ctr.***,

*722 Fed. Appx. 194 (3d. Cir. 2018)*. Moreover, it is equally well-established that municipal entities cannot be held liable for constitutional deprivations merely by hiring alleged tortfeasors; rather, the complained of injury must be causally linked to a custom or policy of the municipal entity to which an employee was acting. *See **Beck v. City of Pittsburgh**, 89 F.3d 966, 972 (3d. Cir. 1996); **H.J.**, 2017 WL 5901096 at \*5* (accord).

Here, other than conclusory allegations of ***Monell*** theories, Plaintiff has failed to plead any facts that would support a basis for such a claim. Indeed, not only has Plaintiff failed to allege any underlying constitutional violation relating to "state created danger," Plaintiff's Complaint makes no reference to any specific policy or custom that would support a finding of liability under ***Monell***—let alone that the policy or custom was a moving force behind a constitutional injury. To the contrary, Count III of Plaintiff's Complaint merely references vague, unidentified "policies and customs regarding student-on student threats and violence, the reporting and prompt investigation of complaints of student-on-student threats and violence and disciplinary actions" and "policies and customs regarding the provision of special education to students with disabilities, including the proper placement of students with disabilities in educational placements that meet their needs." ***ECF #1*** at ¶¶ 159, 160. There is nothing in the Complaint, however, to support any finding that these vague, unidentified policies amount to a deliberate indifference to Plaintiff's constitutional rights and there are certainly no facts in the Complaint to support a finding that the policy was the "moving force behind the constitutional violation." Of course, Plaintiffs' failure to demonstrate a state-created danger claim requires dismissal of the Monell claim. *See **Hargrov**e, 2025 WL 3516783, at \*8-9* (stating that plaintiff's "inability to prove their state-created danger claim dooms their Monell claim," noting that "[w]ithout any evidence of a substantive due process

violation under a theory of state-created danger, the [plaintiffs] cannot show [defendant's] alleged custom harmed them").

Importantly, a purported policy of not responding to bullying has been routinely rejected by the courts as supporting a ***Monell*** claim. *See **B.D. v. Cornwall Lebanon Sch. Dist.***, *2021 WL 1253522, \*18 (M.D. Pa. Apr. 5, 2021)* (granting motion to dismiss *Monell* claim premised on the school district's "practice of not recording bullying incidents," stating that "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983 because it is not an affirmative act"); *see also **Lansberry v. Altoona Area Sch. Dist.***, *356 F.Supp. 3d 486, 502 (W.D. Pa. 2018)* (stating that "harm caused by student-on-student bullying is not a constitutional harm that *Monell* protects against" and "the cases are in agreement that students do not have a constitutional right to be free from bullying and harassment from other students").

Next, although Count III appears to suggest that Plaintiff's claims are premised, at least in part, on a failure to train and/or supervise, there are no facts in the Complaint demonstrating that any alleged failure to train and/or supervise amounted to a deliberate indifference of Plaintiff's constitutional rights, or that the policy of failing to train or supervise actually caused the constitutional injury. Similarly, the complaint is devoid of any facts identifying a failure to provide specific training that has a causal nexus with her injuries. Further, Plaintiff has failed to identify "a pattern of similar constitutional violations" necessary to demonstrate deliberate indifference. It is clear that Plaintiff's generic legal conclusions of "unadorned, the defendant-unlawfully-harmed-me accusation[s]" with respect to her claims for constitutional violations against the Defendants falls far short of the requisite factual enhancement needed to state a claim pursuant to the Supreme Court's directives in ***Iqbal*** and ***Twombly***.

Additionally, while Plaintiff has pled that NPSD "tacitly approved, ratified a culture, and established a custom of unlawful and unconstitutional conduct," she has not pled any conduct by any policymaker or decisionmaker. ***ECF #1*** at ¶ 172. Relying on an alleged custom requires proof of knowledge and acquiescence by a decisionmaker. Plaintiff has failed to plead any conduct by a municipal decisionmaker which is fatal to a Monell claim. *See **Buonadonna v. Southeast Delco Sch. Dist.***, *2015 WL 2365629, \*8 (E.D. Pa. 2015)*. Accordingly, Count III must be dismissed with prejudice.

### C.    Ms. McGee-Heim is Entitled to Qualified Immunity

It is well-established that state actors sued in their individual capacity are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." ***Harlow v. Fitzgerald***, 4*57 U.S. 800, 818 (1982)*. A court analyzing a qualified immunity defense "must determine (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, and (2) whether the right was clearly established at the time of the injury." ***Mann v. Palmerton Area Sch. Dist.***, *189 F.Supp. 3d 467, 478 (M.D. Pa. 2016)*. A state actors' "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." ***Id.***. In order to determine whether the right has been clearly established, "[t]he Supreme Court has emphasized that 'we do not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate.'" ***Id.***, *quoting **Stanton v. Sims***, *134 S.Ct. 3, 5 (2013)*. Indeed, the court in ***Mann*** found that a coach sued by a player who was injured was entitled to qualified immunity, noting that "no published opinion of the Third Circuit has found that a state-created danger arises when coaches fail to take certain

21

precautions in athletic practice or in any analogous situation" so student's "right was not clearly established at the time of his injury." *Id. at 478-479*.

In the case at bar, Plaintiff has also failed to demonstrate that there was a violation of her constitutional rights by Defendant McGee-Heim. In fact, Plaintiff has not made any specific allegations in the Complaint that she attributes directly and specifically to Defendant McGee-Heim, only conclusory statements that arbitrarily include Defendant McGee-Heim's name. Indeed, Plaintiff's theory of liability appears to be that a special education director is liable for injuries caused by a student that is enrolled in a public school district if that student had been removed from a prior school. In essence, Plaintiffs ask the Court to have school district officials make a choice – to risk being sued in their individual capacity for attempting to educate students in the least restrictive environment or violate the other student's rights under the IDEA. Undersigned counsel has not located any case from the Third Circuit to demonstrate that there is such a right – let alone one where "the right was clearly established at the time of the injury."  As Plaintiff has failed to state any facts or claims that Defendant McGee-Heim caused a violation of a "clearly established" constitutional right of Plaintiff and/or that she would have understood she was violating any right of Plaintiff, Ms. McGee-Heim is entitled to qualified immunity. Accordingly all claims against Defendant McGee-Heim in her individual capacity must be dismissed with prejudice.

## V.    **CONCLUSION**

Based upon the foregoing, Defendants, North Penn School District and Megan McGee-Heim, respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint and dismiss Plaintiff's claims against them, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____
      LEE C. DURIVAGE
      Attorney ID No. 205928
      2000 Market Street, Suite 2300
      Philadelphia, PA  19103
      Phone: (215) 575-2584/Fax: (215) 575-0856
      E-mail:  lcdurivage@mdwcg.com /
      mnyurick@mdwcg.com

      Attorneys for North Penn School District
      and Megan McGee-Heim

Dated: January 6, 2026

## <u>CERTIFICATE OF SERVICE</u>

I, Lee C. Durivage, Esquire, do hereby certify that a true and correct copy of Defendants, North Penn School District and Megan McGee-Heim's Motion to Dismiss Plaintiffs' Complaint was served upon plaintiff by ECF at the following address:

Scott H. Wolpert, Esquire
Christine M. Gordon, Esquire
**Timoney Knox, LLP**
400 Washington Drive
Fort Washington, PA 19034

**MARSHALL DENNEHEY, P.C.**

BY:_____
       LEE C. DURIVAGE
       Attorney for North Penn School District and
       Megan McGee-Heim

Dated: January 6, 2025